**M. HILTY LUMBER CO. et al. v. UNITED STATES.**

No. H–247.

Court of Claims.

May 29, 1933.

Wilbur A. Giffen, of Chicago, Ill. (Kixmiller, Baar & Hoffman and Kixmiller, Baar & Morris, all of Chicago, Ill., were on the brief), for plaintiffs.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The questions involved in this case concern the amount of loss sustained by the Forster-Mueller Company on the sale of its plant assets and standing timber on May 1, 1919, and the depletion allowable on timber cut by the Mueller Company from January 1 to May 1, 1919. Some objection is made by defendant to a consideration of the latter question on the ground that it was not properly raised in a claim for refund. We are convinced, however, from a careful consideration of the document attached to the claim as a basis therefor, in conjunction with the action of the commissioner which·gave rise to the additional tax sought to be recovered, that such issue was raised by the claim for refund and we have so found.

The principal issue arises as a result of the sale on May 1, 1919. Included in the assets sold were plant assets of the character ordinarily found in a sawmill unit, such as sawmill, planing and flooring mill, logging railroad and facilities, and other auxiliary equipment. There were also the town-site lands and the buildings located thereon, consisting of a store, office, hotel, and residences for employees. In addition the sale included standing timber, but not the land on which it stood. The timber and certain other assets were acquired prior to March 1, 1913, and others subsequent thereto,.but we are satisfied from the evidence, and have found as a fact, that in all cases where the acquisitions were prior to March 1, 1913, such cost was less than the March 1, 1913 value. Inasmuch as cost was less than such value, and likewise less than the selling price, the deductible loss in 1919 is the difference between the cost and the selling price. United States v. Flannery

et al., 268 U. S. 98, 45 S. St. 420, 69 L. Ed. 865.

Much of the evidence in the extended record was directed to the purpose of establishing the depreciated cost of the depreciable assets. . Plaintiffs contend that the proper cost attributable to such assets is $209,889.42 and that the depreciation sustained is $75,-041.28, whereas the defendant contends for a cost of $198,137.08 and depreciation sustained in the amount of $136,058.45. On the other hand, the Commissioner of Internal Revenue in his determination used a cost of $214,401.34 and accepted the depreciation of $113,356.78 entered by plaintiffs on their books as the sustained depreciation. The argument of the defendant's counsel is based largely on the proposition that depreciation should be computed on the basis of timber to be cut from the area owned by the Forster-Mueller Company after proper allowance for salvage at the time the cutting of timber is completed. That is, the recovery of the capital investment in depreciable property should be allowed over the period when the timber, for which such depreciable property was acquired or constructed to serve, was being cut. This appears to be the basis followed by the commissioner, though consideration is also given not only to timber owned but, also, to timber which may reasonably be considered as available for manufacture at a given sawmill plant.

Plaintiffs' argument proceeds in general upon the proposition that the timber owned, plus that which was available for manufacture at the mill in question, was sufficient to warrant a computation of the sustained depreciation based upon the useful life of the property and equipment measured in terms of exhaustion from ordinary wear and tear. In other words, plaintiffs say that there was sufficient timber available, owned and for purchase, to justify a computation based upon what might be considered the ordinary useful life of the equipment. in question, though providing for its ultimate exhaustion about 1921. To that end various witnesses testified as to the ordinary life of items of sawmill equipment, town buildings, etc., and in their brief plaintiffs present a schedule showing a life of the assets ranging from 10 to 25 years.

■ We have carefully considered the evidence presented and have reached the conclusion that the depreciation of $113,356.78 entered upon the books represents a fair and reasonable determination of the depreciation sustained. It may be true. that much of the

equipment in question could be made to last almost indefinitely through repairs and replacements, provided it did not become obsolete, but in a very substantial sense it would not be the same equipment as originally installed. We are here seeking to determine the reasonable period over which plaintiffs might be expected to recover the capital invested in the enterprise and the extent to which this had been effected at the date of sale. In this connection we have considered not only the ordinary useful life of the assets from a wear-and-tear standpoint, including obsolescence, but also the timber for the manufacture of which the assets would be consumed and from the sale of which the capital would be recovered. It is suggested in plaintiffs' evidence concerning sustained depreciation for the purpose of gain or loss on the sale, that such depreciation is not the same as should be determined in an accounting sense and it is indicated that a different amount might be proper as deductions in computing gross income from that determined as sustained depreciation on a given date. We cannot agree. The two computations should be consistent to the end that double deductions may not be allowed. The further suggestion is made in plaintiffs' brief that the depreciation entered upon the books and claimed as deductions in the returns filed, particularly in the high-tax years, should be given little weight because of the losses sustained and the manner in which such depreciation was determined. Apparently such depreciation was not determined in the most scientific manner and it may be that, due to the losses sustained in certain years, the utmost care was not always exercised in determining the depreciation sustained, but, from a consideration of the whole case, we are of the opinion that the depreciation determined and entered upon the books should not be disregarded. We have endeavored to give due weight to the many pertinent elements concerned in a determination of the ultimate fact required, namely the depreciated cost to be used as a deduction from the consideration received from the sale of the assets in question, in order to arrive at the loss sustained, and we have reached the conclusion set out in the findings, which is, we think, fair and reasonable under all the circumstances.

It follows, therefore, that the loss deductible from income for 1919 was $65,854.79, represented by the difference between the total cost of the assets sold, after considering depreciation of $230,854.79, made up of plant assets of $96,472.64; town-site lands of $8,-630.44; and timber of $125,751.71; and the

fair cash value of the consideration received of $165,000. The facts as found with respect to the depletion sustained between January 1 and May 1, 1919, should be sufficiently clear as not to warrant comment, and the allowance therefor will be made in accordance with our findings.

Entry of judgment will be withheld pending the submission by the parties of a computation in accordance with the conclusions set forth herein. It is so ordered.

BOOTH, Chief Justice, did not hear this case on account of illness and took no part in its decision.